**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

MEGHAN CARTER, on Behalf of Herself and All Others Similarly Situated,

Plaintiff,

vs.

UPSTAR NUTRITION, INC. DBA KETO FOODS

Defendant.

**Case No.:**

**DEMAND FOR JURY TRIAL**

**CLASS ACTION COMPLAINT**

Plaintiff, Meghan Carter ("Plaintiff"), by and through her attorneys, brings this action on behalf of herself and all others similarly situated against Defendant Upstar Nutrition, Inc. dba Keto Foods ("Defendant" or "Keto"). Plaintiff hereby alleges, on information and belief, except for information based on personal knowledge, which allegations are likely to have evidentiary support after further investigation and discovery, as follows:

## INTRODUCTION

1. Plaintiff brings this class action on behalf of herself and all similarly situated consumers who purchased Keto Pint Zero Added Sugar Ice Cream Pints and/or Keto Pint Zero Added Sugar Ice Cream Bars marketed as containing zero added sugar (collectively, the "Products").[1] The Products are manufactured by Upstar Nutrition, Inc.

2. Defendant heavily markets and advertises the Products as containing Zero Added Sugar. However, unbeknownst to reasonable consumers, Defendant adds sugar to the Products in the form of allulose. Allulose is a monosaccharide and therefore a sugar under the applicable federal and Florida labeling standards. It is not present in trace amounts: each serving contains approximately 3 to 7 grams of allulose.

3. The Products repeatedly represent that they contain "ZERO ADDED SUGAR" on their front panels. Those categorical outside-panel statements expressly represent that no sugar was added to the Products and are nutrient-content claims

---

[1] The Products are comprised of Keto Pint Zero Added Sugar Salted Caramel Ice Cream, Keto Pint Zero Added Sugar Salted Caramel Almond Ice Cream Bars, Keto Pint Zero Added Sugar Vanilla Almond Ice Cream Bars, Keto Pint Zero Added Sugar Vanilla Bean Ice Cream, Keto Pint Zero Added Sugar Strawberry Ice Cream, Keto Pint Zero Added Sugar Butter Pecan Ice Cream, Keto Pint Zero Added Sugar Chocolate Chip Cookie Dough Ice Cream. See Keto Pint, Salted Caramel Ice Cream, https://ketopint.com/collections/ice-cream-pints/products/sea-salt-caramel-ice-cream (last visited Sept 1, 2026). Discovery may reveal that additional of Defendant's Products are within the scope of Plaintiff's Complaint. Accordingly, Plaintiff reserves the right to amend her Complaint to add additional of Defendant's Products.

under 21 C.F.R. § 101.13(b) and (b)(1). "ZERO ADDED SUGAR" is a reasonable variation or synonym of the terms "no added sugar," "without added sugar," and "no sugar added," and therefore must comply with § 101.60(c)(2). 21 C.F.R. § 101.13(b)(4). Section 101.60(c)(2)(i) permits such a claim only if no amount of sugars, as defined in § 101.9(c)(6)(ii), or any other ingredient containing sugars that functionally substitutes for added sugars, is added during processing or packaging. Defendant, however, adds approximately 3 to 7 grams of allulose per serving. The governing federal standards are 21 U.S.C. § 343(a)(1),(r)(1)(A); 21 C.F.R. §§ 101.9(c)(6)(ii), 101.13(b), (b)(1), (b)(4), and (c), and 101.60(a)(1)–(3), (c)(2).

4. Accordingly, Plaintiff brings claims against Defendant for violations of: Florida's Deceptive and Unfair Trade Practices Act, § 501.201, et seq. ("FDUPTA") and unjust enrichment, and negligent misrepresentation.

## JURISDICTION AND VENUE

5. The Court has subject matter jurisdiction over the case pursuant to the Class Action Fairness Act, 28 U.S.C. §1332(d)(2)(A) because the proposed Classes include more than 100 members, the aggregate claims of the proposed Classes exceed $5,000,000, exclusive of interest and costs, and at least one member of the proposed Classes is a citizen of a state different from Defendant.

6. Venue is proper in this District under 28 U.S.C. § 1391 because Defendant engaged in substantial conduct relevant to Plaintiffs' claims within this District and has caused harm to Class members residing within this District.

**PARTIES**

7. Plaintiff, Meghan Carter, is a citizen of Florida residing in Mims, Florida. Plaintiff purchased Keto Pint Zero Added Sugar Salted Caramel Ice Cream, Keto Pint Zero Added Sugar Salted Caramel Almond Ice Cream Bars, and Keto Pint Zero Added Sugar Butter Pecan Ice Cream for her personal use from grocery stores in Brevard County, Florida, from 2025 to 2026 for approximately $7.75 to $9.50. Before making her purchase, Plaintiff saw and relied on Defendant's prominent representation that the Product(s) contained "ZERO ADDED SUGAR." Based on that representation, Plaintiff reasonably believed that no sugar had been added to the Products. The representation was part of the basis of Plaintiff's bargain, and she would not have purchased the Products on the same terms had she known it was untrue. Plaintiff also paid a price premium because of Defendant's false and misleading "zero added sugar" claim but did not receive the benefit of her bargain because the Products contain between 3 and 7 grams of allulose. Had Plaintiff known the truth, she would not have purchased the Products or would have paid substantially less for them.

8. Plaintiff remains interested in purchasing Keto Pint ice cream that truly contains no added sugar. However, she cannot know for certain whether Defendant's false labeling and marketing have been or will be corrected, and the Products' composition may change over time. If Defendant continues to make the Zero Added Sugar Representations, Plaintiff will be unable to make informed purchasing decisions and is likely to be misled again unless Defendant is required to ensure that the Products' marketing is accurate. Plaintiff is an average consumer who is not sophisticated in the chemistry, manufacturing, or formulation of food products. Neither Plaintiff nor reasonable consumers have the specialized knowledge required to independently determine whether allulose is a sugar.

9. Defendant, UpStar Nutrition, Inc. ("UpStar"), dba Keto Foods, is an Oregon corporation with its principal place of business in Scottsdale, Arizona. Defendant formulates, labels, markets, and/or sells Products throughout Florida and the United States, including in this district.

## FACTUAL ALLEGATIONS

### A. Consumers Pay More for Products that Contain No Added Sugar

10. Consumer demand for products without sugar is well documented. A 2022 nationwide survey found that 73% of Americans ages 18 to 80 reported trying to limit or avoid sugar.[2]

[2] International Food Information Council, 2022 Food & Health Survey 57 (May 18, 2022),

11. That demand aligns with widely accepted public health recommendations. The 2025–2030 Dietary Guidelines for Americans state that no amount of added sugars is recommended or considered part of a healthy or nutritious diet and that one meal should contain no more than 10 grams of added sugars.[3] The World Health Organization recommends limiting free sugars to less than 10 percent of total daily energy intake and states that limiting them further to 5 percent or less may provide additional health benefits.[4] The American Heart Association recommends limiting adding sugars to no more than 6 percent of daily calories.[5]

12. Food and beverage manufacturers are aware of this demand and of the premium consumers will pay to satisfy it. Products labeled "no added sugar," "zero added sugar," and "0g added sugar" command higher prices than comparable products that do not bear those claims, and manufacturers reserve the front principal display panel of their packaging for the claims they believe will most motivate a purchase.

13. Defendant has capitalized on that demand. It sells the Products containing allulose, an added monosaccharide sugar, while representing them as

---

https://ific.org/wp-content/uploads/2022/06/IFIC-2022-Food-and-Health-Survey-Report-May-2022.pdf.

[3] U.S. Department of Health and Human Services & U.S. Department of Agriculture, Dietary Guidelines for Americans, 2025–2030, at 4 (Jan. 2026), https://cdn.realfood.gov/DGA.pdf

[4] World Health Organization, Healthy Diet (Jan. 26, 2026), https://www.who.int/newsroom/fact-sheets/detail/healthy-diet

[5] American Heart Association, Added Sugars, https://www.heart.org/en/healthy-living/healthyeating/eat-smart/sugar/added-sugars (last visited Sept. 1, 2026)

containing "ZERO ADDED SUGAR." Defendant thereby obtained an unfair competitive advantage over competitors that accurately label comparable ice creams.

**B. Defendant's No Added Sugar Representation**

14. Defendant prominently represents on the front panels of the Products' packaging that they contain "ZERO ADDED SUGAR." These statements are referred to herein as the "Zero Sugar Representations." Below are images of some of the Products and the Zero Sugar Representations:















15. The Zero Sugar Representations communicate to reasonable consumers that no sugar was added to the Products. That is the plain and ordinary meaning of "ZERO ADDED SUGAR."

16. However, these representations are false. As shown on grocery store HEB's website, the Keto Pint Caramel Ice Cream contains 7 grams/allulose per serving, Keto Salted Caramel Almond Bars contain 3 grams/allulose per serving Keto Pint Butter Pecan Ice Cream contains 7 grams/allulose per serving:


H-E-B
Search
Shop Recipes & meals Savings Pharmacy Wellness More H-E-B
H-E-B > Shop > Frozen food > Ice cream & treats > Ice cream >


KETO
SALTED CARAMEL
Nutrition Facts
3 servings per container
Serving size 2/3 cup (90g)
Calories 150 450
INGREDIENTS: Cream, Water, Allulose, Chicory Root Fiber, Skim Milk, Milk Protein Concentrate, Olive Oil, Egg Yolks, Buttermilk Powder, Skim Milk Powder, Sea Salt, Tapioca Starch, Natural Flavors, Locust Bean Gum, Pectin, Guar Gum, Steviol Glycosides, Annatto Extract (For Color), Monk Fruit Extract.
CONTAINS: Egg, Milk.
NET CARB CALCULATION
16g total carbs - 5g fiber - 7g allulose = 4g net carbs


NET CARB CALCULATION
16g total carbs - 5g fiber - 7g allulose = 4g net carbs


KETO
PINT
SALTED CARAMEL ALMOND
Nutrition Facts
4 servings per container
Serving size 1 bar (55g)
Amount per serving
Calories 150
% Daily Value*
Total Fat 14g 18%
Saturated Fat 9g 45%
Trans Fat 0g
Cholesterol 25mg 8%
Sodium 105mg 5%
Total Carbohydrate 12g 4%
Dietary Fiber 3g 11%
Total Sugars 3g
Includes 0g Added Sugars 0%
Sugar Alcohol 3g
Protein 3g
Vitamin D 0.3mcg 2%
Calcium 90mg 6%
Iron 0.4mg 2%
Potassium 90mg 2%
*The % Daily Value tells you how much a nutrient in a serving of food contributes to a daily diet. 2,000 calories a day is used for general nutrition advice.
INGREDIENTS: Cream, Water, Coconut Oil, Allulose, Chicory Root Fiber, Skim Milk, Almonds, Whole Milk Powder, Erythritol, Milk Protein Concentrate, Milkfat, Unsweetened Chocolate, Olive Oil, Buttermilk Powder, Egg Yolks, Cocoa Processed with Alkali, Skim Milk Powder, Sea Salt, Natural Flavors, Tapioca Starch, Soy Lecithin, Locust Bean Gum, Pectin, Guar Gum, Steviol Glycosides, Annatto Extract (For Color), Monk Fruit Extract.
CONTAINS: Egg, Milk, Soy, Almonds.
NET CARB CALCULATION
12g total carbs - 3g fiber - 3g sugar alcohol - 3g allulose = 3g net carbs




### C. Allulose Is a Sugar

17. Chemically, allulose is a monosaccharide. It is the C-3 epimer of D-fructose, meaning that allulose and fructose have the same molecular formula and connectivity but differ in the spatial orientation of a hydroxyl group at the third carbon. "D-allulose, a C-3 epimer of D-fructose, is a rare monosaccharide used as a food ingredient or a sweetener."[6] Allulose is accordingly "a rare sugar," and "a

---

[6] Han-Joo Maeng *et al.*, *Metabolic Stability of D-Allulose in Biorelevant Media and Hepatocytes: Comparison with Fructose and Erythritol*, 8 FOODS ART. 448, at 1 (2019), https://doi.org/10.3390/foods8100448.

monosaccharide that is low in calories and that maintains approximately 70% of sweetness relative to sugar."[7]

18. Allulose is not merely a sugar as a matter of chemical classification. It is used as one. Allulose has "70% of the sweetness of sucrose, which means it is viewed as a potential alternative sweetener."[8]

19. Allulose is utilized in gram-scale quantities as a bulk sweetener due to its lower level of sweetness compared to table sugar. High-intensity sweeteners such as saccharin, aspartame, acesulfame potassium, neotame, sucralose, and advantame are approximately 200 to 20,000 times as sweet as sucrose.[9] By contrast, allulose has approximately 70% of sucrose's sweetness and, as Defendant's own product information shows, is used in large quantities as a bulk sweetener.[10]

20. Allulose also behaves like sugar in food. "It is convenient for the food industry to use D-allulose, as its chemical properties are similar to those of fructose in terms of solubility, water activity, and viscosity."[11]

---

[7] Youngji Han *et al.*, *Gastrointestinal Tolerance of D-Allulose in Healthy and Young Adults. A Non-Randomized Controlled Trial*, 10 NUTRIENTS ART. 2010, at 1–2 (2018), https://doi.org/10.3390/nu10122010.
[8] Maeng *et al.*, supra note 6, at 2.
[9] U.S. FOOD & DRUG ADMINISTRATION, *Aspartame and Other Sweeteners in Food*, https://www.fda.gov/food/food-additives-petitions/aspartame-and-other-sweeteners-food (last visited Sept. 1, 2026).
[10] Mengting Tao, Wenli Zhang & Wanmeng Mu, *D-Allulose: A New Generation of Potential Bulk Sweeteners in the Food Industry*, 73 J. AGRIC. & FOOD CHEM. 27,833, 27,833–35 (2025) (Viewpoint), https://doi.org/10.1021/acs.jafc.5c13620.
[11] *Han et al.*, *supra* note 7, at 10.

21. Each serving of the Products contains approximately 3 to 7 grams of allulose.

22. The Food and Drug Administration ("FDA") identifies allulose as a sugar. In its 2016 Nutrition Facts rulemaking, the FDA stated that allulose, "as a monosaccharide, must be included" in the Total Sugars declaration pending any future rulemaking that would otherwise exclude the substance.[12] The current regulation continues to define Total Sugars as "the sum of all free mono- and disaccharides" and does not exclude allulose. 21 C.F.R. § 101.9(c)(6)(ii).

**D. The Products Violate the FDA Nutrient Content Regulations**

23. Congress empowered FDA to oversee and regulate food labeling by enacting the Federal Food, Drug, and Cosmetic Act, as amended by the Nutrition Labeling and Education Act, 21 U.S.C. § 301 et seq. The FDA promulgated the relevant food-labeling regulations in 21 C.F.R. part 101.

24. FDA regulations distinguish information appearing within the Nutrition Facts panel from statements appearing elsewhere on a label. Information within the Nutrition Facts panel is not itself a nutrient-content claim, but the same information placed outside that panel is subject to the nutrient-content-claim regulations. 21 C.F.R. § 101.13(c). The challenged Zero Sugar Representations are nutrient-content

[12] FOOD LABELING: *Revision of the Nutrition and Supplement Facts Labels*, 81 Fed. Reg. 33,742,33,796 (May 27, 2016).

claims because they appear outside the Nutrition Facts panel and expressly represent that no sugar was added to the Products. 21 C.F.R. § 101.13(b)(1), (c).

25. The categorical Zero Sugar Representations are direct statements that no sugar was added to the Products and thus are expressed nutrient-content claims. 21 C.F.R. § 101.13(b)(1), (c). Because Defendant adds allulose during processing, the representations must satisfy §101.60(c)(2). The governing federal standards are 21 U.S.C. § 343(a)(1), (r)(1)(A); 21 C.F.R. §§ 101.9(c)(6)(ii), 101.13(b), (b)(1), (b)(4), and (c), and 101.60(a)(1)–(3), (c)(2).

26. The Zero Sugar Representations also violate § 101.13(b)(4), which permits reasonable variations and synonyms of defined nutrient-content terms only if they are not misleading. "ZERO ADDED SUGAR" is a reasonable variation or synonym of the terms "no added sugar," "without added sugar," and "no sugar added" governed by § 101.60(c)(2). That regulation permits those terms only if each of the following conditions is met:

> (i) No amount of sugars, as defined in § 101.9(c)(6)(ii), or any other ingredient that contains sugars that functionally substitute for added sugars is added during processing or packaging;
>
> (ii) The product does not contain an ingredient containing added sugars, such as jam, jelly, or concentrated fruit juice;
>
> (iii) The sugars content has not been increased above the amount present in the ingredients by some means, except where the intended functional effect of the process is not to increase the sugars content and the increase is functionally

insignificant;

(iv) The food that the product resembles and for which it substitutes normally contains added sugars; and

(v) Unless the product qualifies as low or reduced calorie, the product bears a statement that it is not "low calorie" or "calorie reduced" and directs consumers to the nutrition panel for sugar and calorie information.

21 C.F.R. § 101.60(c)(2)(i)–(v).

27. These requirements are conjunctive; each one must be satisfied.

28. The Products do not comply with these regulations. Subsection (i) cross-references 21 C.F.R. § 101.9(c)(6)(ii), which provides that "[t]otal sugars shall be defined as the sum of all free mono- and disaccharides (such as glucose, fructose, lactose, and sucrose)." Allulose, as a monosaccharide epimer of fructose, falls squarely within that definition. As such, because Defendant adds approximately 3 to 7 grams of allulose to each serving, the Zero Sugar Representations do not comply with § 101.60(c)(2)(i).

29. FDA's nonbinding allulose guidance does not authorize the challenged categorical added-sugar claims. The guidance announces enforcement discretion, pending rulemaking, for excluding allulose from the gram amounts of Total Sugars and Added Sugars declared on Nutrition and Supplement Facts labels. It does not

amend § 101.9(c)(6)(ii), address § 101.60(c)(2), or purport to authorize a separate outside-panel "ZERO ADDED SUGAR" claim.[13]

30. Because Defendant adds approximately 3 to 7 grams of allulose to each serving size of the Products during processing while the Products bear false, misleading, and impermissible outside-panel nutrient content claims, the Products are misbranded under federal law. 21 U.S.C. § 343(a)(1), (r)(1)(A); 21 C.F.R. §§ 101.9(c)(6)(ii), 101.13(b), (b)(1), (b)(4), and (c), and 101.60(a)(1)–(3), (c)(2). Plaintiff does not seek to enforce the FDCA directly. She seeks relief under independently enforceable state consumer-protection laws, including Florida Statutes Fla. Stat. §§ 500.02(1)-(3) (2025), which requirements are identical to federal food labeling requirements, and independently alleges that the Zero Sugar Representations mislead reasonable consumers.

31. Florida's food labeling laws are required to be in conformity with the Federal Food, Drug, and Cosmetic Act, including federal regulations in Title 21 of the Code of Federal Regulations, as required by Fla. Stat. § 500.02 and implemented through the rulemaking authority under Fla. Stat. § 500.09(3). Florida Administrative Code Rule 5K-4.002(1)(d) explicitly incorporates and adopts Title

[13] U.S. FOOD & DRUG ADMINISTRATION, *The Declaration of Allulose and Calories from Allulose on Nutrition and Supplement Facts Labels: Guidance for Industry* 1, 8–9 (Oct. 2020), https://www.fda.gov/media/123342/download.

21, Part 101, C.F.R. (Food Labeling) as part of Florida's rules under Chapter 500, F.S. ("Florida Food Act").

32. Because the Products bear "ZERO ADDED SUGAR" nutrient-content claims despite Defendant's addition of approximately 3 to 7 grams of allulose per serving size to each pint during processing, the Products are misbranded and falsely advertised under Florida law, and Defendant's labeling, distribution, and sale of the Products are unlawful. The parallel federal standards are 21 U.S.C. §343(a)(1), (r)(1)(A); 21 C.F.R. §§ 101.9(c)(6)(ii), 101.13(b), (b)(1), (b)(4), and (c), and101.60(a)(1)–(3), (c)(2).

**E. Reasonable Consumers Cannot Detect Defendant's Deception**

33. Reasonable consumers have no reason to search the back panel when presented with the conspicuous front-panel representation that the Products contain "ZERO ADDED SUGAR." Consumers are not expected to look beyond a misleading representation on the front of a package to discover that the representation is false. However, even if they did, the Nutrition Facts panels on the Products declare between 2 and 3 grams of Total Sugars and 0 grams of Added Sugars. The ingredient statement identifies allulose but does not state that allulose is a free monosaccharide or sugar. Further, as stated elsewhere, Defendant adds 3 to 7 grams of allulose per serving to the Products.

34. Consumers are not required to conduct independent scientific testing or research into the chemical classification of listed ingredients to verify express label claims. Reasonable consumers do not possess specialized knowledge of carbohydrate chemistry. Defendant is responsible for ensuring that its express labeling and marketing claims are truthful and not misleading.

**F. Defendant Knew the Zero Sugar Representations Were False**

35. Defendant knew, or should have known, that the Zero Sugar Representations were false or misleading when it formulated, labeled, distributed, and sold the Products. Specifically, Defendant knew that: (a) the Products contain allulose; (b) allulose is a free monosaccharide and sugar; (c) Defendant adds approximately 3 to 7 grams of allulose per serving to each Product during processing; (d) the packaging nevertheless represents on both the front and back panels that the Products contain “ZERO ADDED SUGAR”; (e) reasonable consumers would rely on the Zero Sugar Representations when purchasing; (f) consumers would not receive the represented benefit of the bargain; and (g) the Zero Sugar Representations enabled Defendant to charge a premium.

36. Defendant formulates the Products and controls the ingredient statement, Nutrition Facts panel, and packaging. Defendant lists allulose as the third or fourth ingredient and prints the Zero Sugar Representations prominently on both

the front panels. Those facts demonstrate that Defendant knew the Products contained added allulose while making the challenged representations.

37. Defendant could have stopped using the Zero Sugar Representations, accurately qualified them, or ensured that they were true, but chose not to.

**G. Defendant's Zero Sugar Representations Injured Plaintiff and the Class.**

38. Defendant concealed or failed to disclose material facts about the Products, including: (a) that allulose is a free monosaccharide and sugar; (b) that Defendant adds it during processing; (c) that the Products do not comply with pertinent FDA regulations; (d) that the Products do not conform to the Zero Sugar Representations; and (e) that the Products are misbranded under federal and California law as a result of the Zero Sugar Representations.

39. As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representations and omissions, Defendant injured Plaintiff and Class Members in that they: (a) paid money for products that were not as represented; (b) paid a premium for the Products; (c) were deprived of the benefit of their bargains; and (d) purchased misbranded Products that could not lawfully have been sold because they violate FDA requirements and, for Florida Subclass Members, Florida Statutes.

40. Accordingly, Plaintiff and Class Members suffered injury in fact and lost money or property because of Defendant's wrongful conduct.

41. Despite Defendant's misrepresentations, Plaintiff and Class members would purchase the Products, as advertised, if they in fact contained no added sugars. Absent an injunction prohibiting Defendant's deceptive marketing and advertising practices, Plaintiff and Class members will be unable to rely with confidence on Defendant's representations about the Products in the future. Moreover, while Plaintiff and Class members currently believe the Products' marketing and advertising are inaccurate, they lack personal knowledge of Defendant's specific formulation and labeling practices and therefore cannot determine whether the Products truly contain no added sugar at any given time. This uncertainty, combined with their desire to purchase the Products if truthfully labeled and marketed, constitutes an ongoing injury that can and would be remedied by an injunction enjoining Defendant from making the misleading representations alleged herein. In the absence of such injunctive relief, Defendant will continue to mislead consumers, who will reasonably but incorrectly believe that the Products do not contain any added sugar.

42. All of Defendant's misrepresentations and omissions at issue here were consistently made during the applicable class period. Defendant made uniform misrepresentations about the Products that Plaintiff and all class members were exposed to and relied upon.

43. Plaintiff expressly does not seek to contest or enforce any state law that has requirements beyond those required by Federal laws or regulations.

## CLASS ACTION ALLEGATIONS

44. **Class Definition:** Plaintiff brings this class action on behalf of himself, and as a class action on behalf of the following putative classes (the "Classes"):

**Nationwide Class**: All individual residents of the United States who purchased the Product(s) through the date of class certification. Excluded from the Class are: (1) Defendant and all directors, officers, employees, partners, principals, shareholders, and agents of Defendant; (2) Any currently sitting United States District Court Judge or Justice, and the current spouse and all persons within the third-degree of consanguinity to such judge/justice; and (3) Class Counsel.

**Florida Sub-Class**: All individual residents of the State of Florida who purchased the Product(s) through the date of class certification. Excluded from the Class are: (1) Defendant and all directors, officers, employees, partners, principals, shareholders, and agents of Defendant; (2) Any currently sitting United States District Court Judge or Justice, and the current spouse and all other persons within the third-degree of consanguinity to such judge/justice; and (3) Class Counsel.

45. Plaintiff reserves the right to amend the Class definitions if further investigation and discovery indicates that the Class definitions should be narrowed, expanded, or otherwise modified.

46. **Numerosity and Ascertainability:** Plaintiff does not know the exact number of members of the putative classes. Based on Plaintiff's initial investigation, however, Plaintiff is informed and believes that the total number of Class members is at least in the tens of thousands, and that members of the Class are numerous and geographically dispersed throughout the United States and Florida. While the exact number and identities of the Class members are unknown at this time, such information can be ascertained through appropriate investigation and discovery, including Defendant's records, either manually or through computerized searches.

47. **Typicality and Adequacy:** Plaintiff's claims are typical of those of the proposed Class because Plaintiff was exposed to Defendant's Zero Sugar Representations, purchased a Product in reliance on them, and suffered the same type of economic loss. Plaintiff will fairly and adequately represent and protect the interests of the proposed Class. Plaintiff does not have any interests that are antagonistic to those of the proposed Class. Plaintiff has retained counsel competent and experienced in the prosecution of this type of litigation.

48. **Existence and Predominance of Common Questions of Law and Fact:** Common questions of law and fact exist as to all Class Members and

predominate over questions affecting only individual members. These common legal and factual questions include, but are not limited to:

(a) Whether allulose is a free monosaccharide and sugar;

(b) Whether the Products contain added allulose and fail the governing conditions for the Zero Sugar Representations, including 21 U.S.C. § 343(a)(1), (r)(1)(A); 21 C.F.R. §§ 101.9(c)(6)(ii), 101.13(b), (b)(1), (b)(4), and (c), and 101.60(a)(1)–(3), (c)(2);

(c) Whether reasonable consumers would understand Defendant's representations concerning the Products to be untrue or misleading;

(d) Whether Defendant's representations were material;

(e) Whether the Products are misbranded under federal law and, with respect to the Florida Subclass, Florida law;

(f) Whether Defendant was unjustly enriched as a result of the unlawful conduct alleged in this Complaint;

(g) Whether Plaintiff and Class Members suffered damages as a result of Defendant's actions and the amount of those damages;

(h) Whether Plaintiff and Class Members are entitled to attorneys' fees and costs.

49. **Superiority:** A class action is superior to all other available methods for the fair and efficient adjudication of the asserted claims under Federal Rule of

Civil Procedure 23(b)(3) because the expense and burden of individual litigation make it economically infeasible for Class Members to seek redress outside a class action. Even if Class Members could afford individual litigation, the burden on the courts would be substantial. Individualized litigation would risk varying or contradictory judgments and magnify delay and expense through repeated trials of the same factual issues. By contrast, maintaining this action as a class action with respect to some or all issues presents fewer management difficulties, conserves party and judicial resources, and protects each Class Member's rights. Plaintiff anticipates no difficulty managing this action as a class action. Classwide relief is essential to compel compliance with applicable consumer protection laws, and separate actions could subject Defendant to inconsistent obligations.

## CAUSES OF ACTION

### COUNT I

**For Violations of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. 501.201 et seq. (Florida Class)**

50. Plaintiff realleges and incorporates by reference Paragraphs 1 through 49 as if fully set forth herein.

51. Plaintiff brings this claim on her own behalf and on behalf of the Florida Subclass against Defendant.

52. Defendant violated and continues to violate Florida's Deceptive and Unfair Trade Practices Act by engaging in unfair methods of competition, unconscionable acts and practices, and unfair and deceptive acts and practices in the conduct of their business.

53. The material misstatements and omissions alleged herein constitute deceptive and unfair trade practices, in that they were intended to and did deceive Plaintiff and the general public into believing that Defendant's Products contain no added sugar.

54. There is no justifiable purpose in representing that the Products made with approximately 3 to 7 grams of added allulose per serving contain zero grams of added sugar.

55. Plaintiff and Class members relied upon these representations in deciding to purchase the Product(s). Plaintiff's reliance was reasonable because of Defendant's reputation as a reliable company. Plaintiff and Florida Subclass Members could not reasonably have avoided their injury or known that the prominent labeling was inaccurate. Consumers lack specialized knowledge to identify allulose as a free monosaccharide and are not required to reconcile the front panel promise with the back-panel ingredient and Nutrition Facts information.

56. Had Plaintiff known that the Products were not as advertised, she would not have purchased them. As a result of Defendant's deceptive and unfair acts, Plaintiff and Class members have been damaged.

57. Defendant's conduct offends established public policy and is immoral, unethical, oppressive, and unscrupulous to consumers.

58. Plaintiff and Class members are entitled to damages in an amount to be proven at trial.

59. Defendant should also be ordered to cease its deceptive advertising and should be made to engage in a corrective advertising campaign to inform consumers that its Product contains added sugar.

**COUNT II**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Nationwide Classes)**

60. Plaintiff realleges and incorporates by reference Paragraphs 1 through 49 as if fully set forth herein.

61. Plaintiff brings this claim individually and on behalf of the Nationwide Class against Defendant.

62. To the extent required, Plaintiff asserts this cause of action in the alternative to her legal claims, as permitted by Federal Rule of Civil Procedure 8.

63. Defendant's false and misleading Zero Sugar Representations caused Plaintiff and Class Members to pay a price premium for the Products.

64. Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiff and the Class Members is unjust and inequitable; Defendant has been unjustly enriched in an amount to be determined at trial.

65. Defendant thereby received a direct and unjust benefit at the expense of Plaintiff and Class Members.

66. Plaintiff and Class Members seek the return of that unjust benefit.

**COUNT III**
**Negligent Misrepresentation**
**(On Behalf of Plaintiff and the Nationwide Classes)**

67. Plaintiff realleges and incorporates by reference paragraphs 1 through 49 above as if fully set forth herein.

68. Defendant has negligently represented that the Products contain no added sugar, when in fact the Products contain allulose, an added sugar, as alleged herein.

69. Defendant has misrepresented a material fact to the public, including Plaintiff and Class members, about the Products.

70. The Products are marketed directly to consumers by Defendant, come in sealed packages, and do not change from the time they leave Defendant's possession until they arrive in stores to be sold to consumers.

71. Defendant knows the Products' misstatements are material to the reasonable consumer and Defendant intends for consumers to rely upon the misstatements when choosing the Products.

72. Defendant has omitted the fact that the Products contain add sugar, despite claiming that the Products contain "Zero Added Sugar."

73. Defendant knew or should have known that these misstatements or omissions would materially affect Plaintiff's and Class members' decisions to purchase the Products.

74. Plaintiff and other reasonable consumers, including the Class members, reasonably relied on Defendant's representations set forth herein, and, in reliance thereon, purchased the Products.

75. The reliance by Plaintiff and Class members was reasonable and justified in that Defendant appeared to be, and represented itself to be, a reputable business, and it distributed the Products through reputable companies.

76. Plaintiff and Class members would not have been willing to pay for Defendant's Products if they knew that the Products contained added sugar.

77. As a direct and proximate result of Defendant's misrepresentations, Plaintiff and members of the Class were induced to purchase Defendant's Products, and have suffered damages to be determined at trial, in that, among other things, they have been deprived of the benefit of their bargain in that they bought Products that

were not what they were represented to be, and they have spent money on Products that had less value than was reflected in the premium purchase price they paid for the Products.

78. Plaintiff seeks all available remedies, damages, and awards as a result of Defendant's negligent misrepresentations.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant as follows:

a. Certify this action as a class action;

b. Award compensatory, statutory, and punitive damages as to all Counts where such relief is permitted by law;

c. Enjoin Defendant's conduct and order Defendant to engage in a corrective advertising and labeling/disclosure campaign;

d. Award equitable monetary relief, including restitution;

e. Award pre-judgment and post-judgment interest at the legal rate;

f. Award Plaintiff and Class members the costs of this action, including reasonable attorneys' fees, costs, and expenses; and

g. Award such other and further legal and equitable relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury on all issues so triable.

DATED: September 1, 2026

*s/William Wright*
**WILLIAM WRIGHT**
The Wright Law Office, P.A.
FL Bar No. 138861
**NISHA WRIGHT**
FL Bar No. 11012
515 N. Flagler Drive, Suite 350
West Palm Beach, FL 33401
Telephone: (561) 514-0904
willwright@wrightlawoffice.com
nisha@wrightlawoffice.com